No.   89-585

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

IN RE THE MARRIAGE OF

BEATRICE BECKER,

        Petitioner and Respondent/Cross-
                        Appellant,

   and

RODERICK R. BECKER,

        Respondent and Appellant.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

     Helene Orenstein, Attorney at Law, Bozeman, Montana

     For Respondent/Cross-Appellant:

     Karl P. Seel, Attorney at Law, Bozeman, Montana

Submitted on Briefs:   June 28, 1990

Decided:   September 13, 1990

Filed:

_____
Clerk

'90 SEP 13 AM 10 46
ED SMITH, CLERK
MONTANA SUPREME COURT
FILED

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the Eighteenth Judicial District, Gallatin County, Montana. Beatrice Becker petitioned the District Court for injunctive relief to prevent her former husband, Roderick Becker, from interfering with the sale of real property and distribution of the proceeds pursuant to their 1984 dissolution decree. The District Court ordered that the property be sold as contemplated by the original property settlement agreement, but modified the distribution of the assets by allowing the husband a set-off for the amount he would have received for child support payments. The District Court determined that the wife's share of the profits was $5,978.06 less one-half of the closing costs. After the filing of the husband's Notice of Appeal, the District Court issued an order *nunc pro tunc* to correct mathematical errors, reducing the wife's award to $2,008.06 less one-half of the costs. From this judgment, the husband appeals and the wife cross-appeals. We affirm in part and remand in part.

The issues are:

1. Did the District Court err in modifying the property settlement and child support agreement?

2. Did the District Court abuse its discretion in valuation of the marital real property?

3. Did the District Court err in issuing an order *nunc pro*

2

tunc after the husband filed the Notice of Appeal?

4. Did the District Court abuse its discretion in refusing to award attorney's fees to the husband?

Beatrice and Roderick Becker were married June 10, 1969. The wife filed a petition for dissolution on April 4, 1984. At the time of the dissolution, two children were living with the couple, a daughter from the present marriage, age 13, and the wife's son from a previous marriage, age 17. The husband worked as a self-employed carpenter who contributed to the marital income during the marriage, but due to a disability contributed a minimal amount to the family income for a time previous to the dissolution. The wife was employed as a secretary whose wages were the family's main source of income at the time of the dissolution.

The wife wanted a quick divorce, and the husband agreed to her handling the divorce procedure. The husband was not represented by counsel. The wife's attorney drafted the appropriate documents, including the property settlement agreement. According to their agreement, the wife transferred her interest in the couple's real property, a five-acre tract with a mobile home, to her husband. The agreement stated that the wife was not required to pay the husband child support for her son and the couple's daughter who were in the husband's custody. Although not stated in the written property settlement agreement, the husband testified that he agreed to take the wife's interest in the house in lieu of child support. The wife denied that they had any such understanding. A quit claim

3

deed for the real property was executed to the husband before the dissolution hearing held on May 7, 1984.

At the hearing the District Court rejected the property settlement agreement as unconscionable because the wife received no interest in the real property. The husband and wife then signed an amended property settlement and child custody agreement which merged with the dissolution decree of June 21, 1984.

The amended agreement set the value of the real property, which had a $21,078 mortgage, at $110,000 and provided that the husband should reside there until the youngest child graduated from high school. The husband promised to pay the mortgage payment and property taxes while he lived there and agreed to destroy the quit claim deed executed to him. After the youngest child reached her majority, the property was to be sold, and the wife was to receive $44,461 less one-half of the closing costs as her share. The provision that the wife was not required to pay child support was retained in the amended agreement.

Although the amended property settlement agreement provided for it, an appraisal of the property's value was not made at that time. The husband testified that the figure was set by his wife. The couple had bought the property in 1974 for $32,000. In the present action, the property was appraised for values ranging from $30,000 to $37,000. The husband claimed the 1984 value was less than the present value. The District Court determined that the 1984 value of the real property was $42,550.

4

The husband testified that he had signed the amended property agreement with the understanding that it was not the true agreement, but a formality to satisfy the court. The husband stated that the original agreement exchanging the wife's share of the real property for her child support obligation, was still in force. In carrying out the agreement, the wife executed, notarized, and delivered a second quit claim deed to her husband on November 26, 1984, five months after the dissolution decree was granted. The wife testified that she thought it best that the husband and children have the home, which was also the husband's place of business.

The youngest child reached the age of majority in 1988, and the wife brought this action to enforce the amended property settlement agreement set forth in the dissolution decree and to enjoin the husband from interfering with the sale of the property and distribution of the proceeds.


I

Did the District Court err in modifying the property settlement and child support agreement?

The wife argues that the District Court had no authority to modify the property settlement agreement incorporated into the dissolution decree and that reopening the judgment was barred by the doctrine of res judicata. The husband contends that the agreement had been effectively modified when the wife executed and

delivered the quit claim deed to him.

First, we consider the modification of the property settlement agreement, governed for by § 40-4-208, MCA, which provides:

> (3) The provisions as to property disposition may not be revoked or modified by a court, except:
>
> (a) upon written consent of the parties; or
>
> (b) if the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state.

Section 40-4-208(3), MCA.

The "conditions that justify the reopening of a judgment" include the grounds listed in Rule 60(b), M.R.Civ.P.: mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, fraud, misrepresentation, misconduct, or "any other reason justifying relief." In re the Marriage of Gerleman (1987), 228 Mont. 158, 160, 741 P.2d 426, 427; In re the Marriage of Lorge (1984), 207 Mont. 423, 430, 675 P.2d 115, 118 (citing Hadford v. Hadford (Mont. 1981), 633 P.2d 1181, 1187, 38 St.Rep. 1308, 1316 (Sheehy, J., dissenting)). A property settlement agreement is also subject to modification under the laws governing all contracts. In re the Marriage of Richardson (1985), 214 Mont. 353, 356, 693 P.2d 524, 526.

The District Court found that the parties had "circumvented the authority" of the District Court and "made their own agreement aside from the property settlement agreement that was approved by the court." The husband and wife had signed the amended property

6

settlement agreement, but apparently had orally agreed to retain the original property settlement agreement. Pursuant to this agreement, the wife deeded her interest in the couple's real property to her husband in lieu of child support. The wife then brought this action attempting to enforce the amended property settlement agreement which required that the property be sold and that the wife receive $44,000 as her share. The present value of the property is $37,000. Nothing was provided to the husband for child support or for the mortgage payments and property taxes he had paid.

The situation is akin to that in State, ex rel. Blakeslee v. Horton (1986), 222 Mont. 351, 722 P.2d 1148. In that case, subsequent to the divorce, the parties made an agreement regarding child support payments, and fourteen years later the wife tried to enforce the child support terms of the dissolution decree. We adopted the finding of Judge Luedke: "'Equity cannot allow the mother to participate in nullification of the purpose of the law in fact, and at the same time, allow her to claim the benefit of it in theory. . . . '" Blakeslee, 222 Mont. at 355, 722 P.2d at 1150 (emphasis omitted).

The principle here is the same. To allow the wife to enforce the amended property settlement agreement, as written, would be unjust. Not only would the wife receive the entire proceeds from the property, she would evade her legal and moral obligation of child support. Section 40-4-204(1), MCA; State Dept. of Revenue

7

v. Hubbard (1986), 222 Mont. 156, 159, 720 P.2d 1177, 1179. Moreover, the wife would be unjustly enriched by the mortgage payments, taxes and maintenance costs which the husband paid during the years he occupied the property. These conditions justify the reopening of the judgment pursuant to § 40-4-208(3)(b), MCA.

We note that child support is not ordinarily granted retroactively. Section 40-4-208(1), MCA. If child support has never been determined, it cannot be modified; and the statutory provision prohibiting retroactive modification, § 40-4-208(1), MCA, does not control. Hubbard, 222 Mont. at 161, 720 P.2d at 1180. In Hubbard, as here, the district court was correct in ordering collection of child support back to the date of the dissolution decree.

We hold that the District Court had sufficient grounds for modifying the distribution of the assets after the sale of the real property to allow the husband what he would have received if he had been paid child support payments rather than his wife's share of the real property.

Secondly, we address the husband's argument that the quit claim deed executed and delivered to him five months after the entry of the dissolution order validly modified the property settlement agreement. The Property Settlement and Child Custody Agreement prohibited modification "except by judcial [sic] order or by mutual consent and agreement of the parties, expressed in writing." The husband contends that the quit claim deed

8

constituted written "mutual consent and agreement of the parties," and was therefore a valid modification of the agreement giving him the wife's interest in the real property. The wife claims that the transfer was void for lack of consideration.

We need not decide this issue since we have affirmed the District Court's decision that their subsequent agreement, whether oral or written, circumvented the authority of the court and was invalid.

## II

Did the District Court abuse its discretion in valuation of the marital real property?

The current market value of the property was appraised at $30,000. Using a cost approach analysis, based on replacement cost, the property was valued at $37,000. The court chose the latter figure and then added 15% based on the change in property values to arrive at an approximation of the 1984 value of the real property of $42,550. The husband claims that the court should have used the $30,000 figure and should have decreased the amount by 12-15%, rather than increased it.

Generally, the District Court is vested with broad discretion in performance of its duty to achieve an equitable property distribution and can adopt any reasonable valuation so long as it is supported by the record. In re the Marriage of Johns (1989), 238 Mont. 256, 258, 776 P.2d 839, 840; In re the Marriage of Luisi

(1988), 232 Mont. 243, 247, 756 P.2d 456, 459. No abuse of discretion occurred in using the $37,000 valuation.

In determining the 1984 valuation of the real property, the District Court used the appraisal by Gary France. The letter written by Mr. France stated that appraising the 1984 value of property was "somewhat speculative and unverifiable" and that in his opinion property had appreciated to a high in the "early 1980's" after which it declined to present levels. Mr. France also stated that a "loss of 12% to 15% was not uncommon," but did not make it clear to what time frame he was referring. The District Court interpreted the statement to mean that property values had decreased 12 to 15% from 1984 to the present. However, the appraiser went on to state that the 1984 value of the real property in question was comparable to its 1974 value ($32,000). In the appraiser's opinion, the decline had already taken place by 1984. Thus, the court misinterpreted the appraiser's admittedly confusing analysis of 1984 property values, and this portion of the opinion is remanded to the District Court for further consideration.

III

Did the District Court err in issuing an order nunc pro tunc after the husband filed the Notice of Appeal?

After the Notice of Appeal was filed, the District Court issued an order nunc pro tunc to correct errors in mathematical calculations made in determining the wife's share of the proceeds

10

from sale of real property. The District Court has inherent power to correct clerical errors in its own judgments in order to ensure that the record "speaks the truth" and reflects what the court actually decided. State v. Owens (1988), 230 Mont. 135, 138, 748 P.2d 473, 474. Whenever a clerical mistake occurs in a judgment, order, or other part of a court record, and the error is admitted by the parties or can be rectified without inequity or prejudice to another party, the district court can correct the error at any time, either nunc pro tunc or by an order pursuant to Rule 60(a), M.R.Civ.P. Winn v. Winn (1982), 200 Mont. 402, 412, 651 P.2d 51, 56. Such an order cannot be used to correct judicial errors. In re Marriage of Cannon (1985), 215 Mont. 272, 274, 697 P.2d 901, 902.

Here the court made mathematical errors in its calculations of the wife's share of the proceeds from the sale of real property. Although the wife's portion was reduced from $5,978.06 to $2,008.06, the error was purely clerical and made the record "speak the truth."

The wife argues that the District Court's order was invalid because it no longer had jurisdiction over the matter once the Notice of Appeal was filed. Once a proper appeal is taken, jurisdiction of the cause passes from the District Court to the Supreme Court. However, the District Court retains the power to correct clerical errors even after the appeal is initiated. Powers Mfg. Co. v. Leon Jacobs Enterprises (1985), 216 Mont. 407, 411-

11

12, 701 P.2d 1377, 1380; Northern Plains Resource Council v. Board of Health & Environmental Sciences (1979), 184 Mont. 466, 472, 603 P.2d 684, 688. We hold that the District Court did not err in issuing the order nunc pro tunc after the Notice of Appeal had been filed.

IV

Did the District Court abuse its discretion in refusing to award attorney's fees to the husband?

The general rule is that the prevailing party is not entitled to attorney's fees absent a specific contract provision or statutory grant. Cannon, 215 Mont. at 276, 697 P.2d at 903. The Property Settlement and Child Custody Agreement incorporated into the dissolution decree provides that in any action to interpret or modify the agreement, the court "may award reasonable attorneys fees and Court costs as provided by law." By statute, the court "after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under chapters 1 and 4 of this title and for attorney's fees. . . . " Section 40-4-110, MCA (emphasis added). Since under the express contractual agreement and the statute, the awarding of attorney's fees is permissive, the appropriate standard of review is whether the court abused its discretion. In re the Marriage of Smith (Mont. 1990), 791 P.2d 1373, 1378, 47 St.Rep. 925, 931; In re the Marriage of Anderson (1988), 230 Mont. 89, 95, 748 P.2d 469, 472.

12

The husband claims that the court should have awarded him attorney's fees because the wife in bringing this action forced him to retain counsel and sustain substantial costs. The statute requires the court to consider "the financial resources of both parties," but does not mandate consideration of any other factors. Section 40-4-110, MCA.

In this case, the record indicates that the court thoroughly analyzed the financial resources of each party. We find no abuse of discretion by the District Court in denying the husband attorney's fees.

We affirm this decision in part and remand for further consideration the District Court's valuation of the marital property consistent with this opinion.

_____
                Justice

We concur:

_____
        Chief Justice

_____

_____

_____
            Justices

13